UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-0292

FRED NEKOUEE, individually,                    :
                                               :
               Plaintiff,                      :
                                               :
vs.                                            :
                                               :
BCORE SELECT RAVEN 1 LLC, a Delaware           :
limited liability company,                     :
                                               :
               Defendant.                      :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, BCORE SELECT RAVEN 1 LLC, a Delaware limited liability company (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, the Residence Inn by Marriott has an address of 1450 Dry Creek Drive, Longmont, Colorado 80503, in Boulder County, Colorado ("Residence Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Residence Inn which forms the basis of this lawsuit on February 3, 2019 with a checkout on February 4, 2019.

8.      Fred Nekouee returned to the Residence Inn on October 2, 2019, but after encountering barriers to access on this visit in the parking lot, walkways and men's restroom in the lobby, he decided not to stay at the Residence Inn on such date.

9.      Fred Nekouee requested an accessible room.

10.      Fred Nekouee stayed in accessible room 118 at the Residence Inn.

11.      Due to the barriers to access Fred Nekouee encountered at the Residence Inn, Fred Nekouee is deterred from visiting the Residence Inn to avail himself of the goods and services offered to the public there.

12.      Fred Nekouee visited the Longmont area near the Residence Inn in early August 2018 and again on September 29, 2018 through October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

13.     The Plaintiff returned to the Longmont area near the Residence Inn on February 3-6, 2019 and again on May 7-10, 2019.

14.     Fred Nekouee attended a heavy equipment auction on May 8, 2019 in Longmont, Colorado.

15.     The Plaintiff plans to return to the Longmont-Louisville area in March 2020 to attend a heavy equipment auction and to vacation.

16.     Residence Inn is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

17.     The Plaintiff likes to stay at moderately-priced hotels like Residence Inn.

18.     The Plaintiff plans to return to the Residence Inn again if the barriers to access are removed.

19.     The Plaintiff has encountered architectural barriers at the subject property.

20.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby restrooms, accessible guestroom 118, the restroom in the accessible room 118, and the pool and fitness areas of the Residence Inn.

24.     The Plaintiff encountered and observed barriers to access in the men's restroom in

the lobby.

25.     The cross slope of the walking surface to the left of the main entrance (oriented as one faces the entrance) to the Residence Inn is steeper than 1:48 and steeper than 3.1%.

26.     In the parking lot, the parking space for disabled patrons to the left of the main entrance to the Residence Inn (oriented as one faces the main entrance) has a running slope steeper than 1:48 and steeper than 3.1%.

27.     The Plaintiff is deterred from visiting the Residence Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

28.     During his October 2019 visit to the Longmont-Louisville area, Fred Nekouee returned to the Residence Inn, and he observed and encountered barriers to access that he had encountered before in the parking lot, access aisles and walkways, and men's restroom in the lobby and the barriers to access had not been removed.   Due to such barriers to access, Fred Nekouee is deterred from staying at the Residence Inn.

29.     Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Residence Inn.

30.     Residence Inn is a place of public accommodation.

31.     Defendant is responsible for complying with the obligations of the ADA.

32.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 38 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

33.     Fred Nekouee desires to visit the Residence Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

34.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

35.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

36.     Preliminary inspections of the Residence Inn show that ADA violations exist.

37.     Physical conditions at the Residence Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 38 below.

38.     The ADA violations that Fred Nekouee personally encountered or observed at the Residence Inn include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.     (i) In the parking lot, the parking space for disabled patrons shown in the photograph below does not have an upright sign with the International Symbol of Accessibility.   (ii) The parking space for disabled patrons shown in the photograph below does not have an upright sign with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) Due to the lack of an upright sign with the International Symbol of Accessibility, the Plaintiff had difficulty finding an

accessible parking space.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.



b.    (i) In the parking lot, the parking space for disabled patrons in front of The Meeting Place shown in the photograph in subparagraph (a) above, has a running slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) This parking space for disabled patrons has a running slope that is steeper than 1:48 and that is as steep as about 4%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) Due to the running slope of this parking space, the Plaintiff had difficulty unloading from his vehicle and loading back into his vehicle and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

c.    (i) In the parking lot, the asphalt surface of the parking space for disabled patrons in front of the side entrance to the hotel is broken, has a change of level, and has a running slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) The asphalt surface of the parking space for disabled patrons in front of the side entrance to the hotel is broken, has a

change of level, and has a running slope that is steeper than 1:48 and that is steeper than 6%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope of this parking space in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the asphalt surface of the parking space for disabled patrons in front of the side entrance to the hotel is broken, has a change of level, and has a cross slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) The asphalt surface of the parking space for disabled patrons in front of the side entrance to the hotel is broken, has a change of level, and has a cross slope that is steeper than 1:48 and that is steeper than 5%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the cross slope of this parking space in his wheelchair, and it made his wheelchair unstable. (iv) The action required to reduce the cross slope of this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) The walking surface between buildings, shown in the photograph below, has a change in level at the utility cover of greater than 0.25 inches.   (ii) The change in level at this utility cover on this walkway along the accessible route to the lobby is greater than 0.25 inches and is about 1.5 inches, in violation of Federal Law 2010, ADAAG § 303.2. (iii) The Plaintiff encountered this change of level while moving in his wheelchair, and it stopped the forward movement of his wheelchair and made his wheelchair unstable.   (iv) The action required to reduce the change of level on this walkway at the utility cover is easily accomplishable and able to be carried out without much difficulty or expense.



f.      (i) The walking surface between buildings, shown in the photograph below, has a change in level between concrete sections greater than 0.25 inches.   (ii) The change in level at between these concrete sections on this walkway along the accessible route to the lobby is greater than 0.25 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG § 303.2.   (iii) The Plaintiff encountered this change of level while moving in his wheelchair, and it stopped the forward movement of his wheelchair and made his wheelchair unstable.   (iv) The action required to reduce the change of level on this walkway is easily accomplishable and able to be carried out without much difficulty or expense.



g.    (i) In the parking lot in front of the side entrance to the hotel, the access aisle serving the parking space for disabled patrons has a cross slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) The cross slope of this access aisle is steeper than 1:48 and is steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this slope in this access aisle, and it made his wheelchair unstable. (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

h.    (i) The running slope of the walking surface in front of and to the right of the side entrance door oriented as one faces the building is steeper than 1:20 and is steeper than 6%. (ii) The running slope of the walking surface in front of and to the right of the side entrance

door oriented as one faces the building is steeper than 1:20 and is steeper than 9%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this running slope of this walkway, and it made his wheelchair unstable, and it made it difficult for him to descend and ascend the walkway.   (iv) The action required to reduce the running slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The cross slope of the walking surface in front of and to the right of the side entrance door oriented as one faces the building is steeper than 1:48 and is steeper than 4%. (ii) The cross slope of the walking surface in front of and to the right of the side entrance door oriented as one faces the building is steeper than 1:48 and is steeper than 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered the cross slope of this walkway, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The cross slope of the walking surface in front of The Meeting Place at the Residence Inn is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of the walking surface in front of The Meeting Place at the Residence Inn is steeper than 1:48 and is steeper than about 5%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered the cross slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) The cross slope of the walking surface to the right of the main hotel entrance

(oriented as one faces the main entrance) is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of the walking surface to the right of the main hotel entrance (oriented as one faces the main entrance) is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep cross slope of this walking surface while moving in his wheelchair, and the cross slope made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense,

l.   (i) The cross slope of the walking surface near the side entrance shown in the photograph below is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of this walking surface is steeper than 1:48 and is steeper than about 5%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this cross slope of this walkway, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.



m.  (i) The cross slope of the walking surface as one approaches the grill and patio is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of the walking surface as one approaches the grill and patio shown in the photograph below is steeper than 1:48 and is steeper than about 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The steep cross slope of this walkway made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.



n.    (i) The running slope of the access ramp shown in the photograph below in front of The Meeting Place at the Residence Inn is steeper than 1:12 and is steeper than 9%.   (ii) The running slope of this access ramp is steeper than 1:12 and is steeper than about 12%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) Due to the steep running slope of this access ramp, the Plaintiff required assistance to ascend and to descend it.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



o.   (i) The slope of the curb sides or flares of the access ramp shown in the photograph in subparagraph (n) above, are steeper than 1:10 (10%) and steeper than 11%.   (ii) The slope of these curb ramp sides or flares are steeper than 1:10 (10%) and steeper than about 20%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered these curb ramp sides to this access ramp and he had difficulty maneuvering his wheelchair to avoid overturning his wheelchair on their steep slopes even with assistance.   (iv) The action required to reduce the slope of these curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) The slope of the curb sides or flares of the access ramp shown in the photograph below, are steeper than 1:10 (10%) and steeper than 11%.   (ii) The slope of these curb ramp sides or flares are steeper than 1:10 (10%) and steeper than about 20%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered these curb ramp

sides to this access ramp and he had difficulty maneuvering his wheelchair to avoid overturning his wheelchair on their steep slopes even with assistance.   (iv) The action required to reduce the slope of these curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.



q.    (i) The slope of the curb side or flare of the access ramp near the side entrance shown in the photograph below with the level tool on it, is steeper than 1:10 (10%) and steeper than 11%.   (ii) The slope of this curb ramp side or flare is steeper than 1:10 (10%) and steeper than about 20%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered this curb ramp side to this access ramp and he had difficulty maneuvering his wheelchair to avoid overturning his wheelchair on its steep slope even

with assistance.   (iv) The action required to reduce the slope of this curb ramp side is easily accomplishable and able to be carried out without much difficulty or expense.



**LOBBY ENTRANCE DOOR**

r.     (i) The force needed to open the door to the lobby from the patio is more than 5 pounds.   (ii) The force required to open this door is about 12 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

s.      (i) The force needed to open the door to the men's restroom in the lobby is more than 5 pounds.   (ii) The force required to open this door is about 15 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

t.      (i) The time for the entrance door to the men's restroom in the lobby to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the entrance door to the men's restroom in the lobby to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to pass through this doorway.   (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

u.      (i) In the men's restroom in the lobby, the accessible toilet compartment is less than 59 inches deep.   (ii) This accessible toilet stall is only about 55 inches deep and the compartment door swings into the compartment, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the depth of this compartment, the Plaintiff had difficulty maneuvering his wheelchair in it to use the toilet.   (iv) The action required

to provide an accessible toilet compartment that has a depth of at least 59 inches is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the men's restroom in the lobby, a door pull is not provided on both sides of the accessible toilet compartment door near the latch.   (ii) A door pull is not provided on both sides of this accessible toilet compartment door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull, the Plaintiff could not fully close this door for privacy when he used the toilet.   (iv) The action required to install a door pull on both side of this toilet compartment door is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the men's restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not located between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iv) The action required to relocate a toilet paper dispenser or to install an ADA compliant toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

y.   (i) In the breakfast area, the dispenser keys to the juice machine, the hot water dispenser lever, tea bags, the waffle maker handle, and the top of the fruit holder stand are all higher than 48 inches above the floor.   (ii) In the breakfast area, the dispenser keys to the juice machine, the hot water dispenser lever, tea bags, the waffle maker handle, and the top of the fruit holder stand are all higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach these items to fix himself breakfast due to their height above the floor.   (iv) The action required to relocate these items or replace these dispensers and containers is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the breakfast area, a portion of the counter that is 36 inches high maximum is not provided.   (ii) In the breakfast area, a portion of the counter that is 36 inches high maximum is not provided, in violation of Federal Law 2010, ADAAG § 904.5.   (iii) Due to the height of the counters in the breakfast area, the Plaintiff had increased difficulty reaching items on the counter and he could not reach some items on the counter.   (iv) The action required to provide a portion of the service counter in the breakfast area that is 36 inches high maximum is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 118**

aa.   (i) The force needed to open the door to accessible guestroom 118 is more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) and is about 14 pounds, pertaining to the continuous application of force

necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.  (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb.  (i) In accessible guestroom 118, the security latch for the entrance door is higher than 48 inches above the floor.   (ii) This security latch is higher than 48 inches above the finish floor and is as high as about 55 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not close this security latch.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) The time for the entrance door to accessible guestroom 118 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the entrance door to accessible guestroom 118 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to enter this room.   (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

dd.   (i) The elapsed time for the entrance door to the pool area to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed

time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the pool area.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) The entrance to the pool area does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the pool area does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the pool, and the lack of such signage constitutes a barrier to access in that it indicates that such pool area is not accessible to disabled individuals, and it deters him from visiting Residence Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the pool is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) The force needed to open the door to the pool area is more than 5 pounds. (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) and is about 11 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he had difficulty opening this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

gg.   (i) In the fitness area, the wall-mounted thermostat keys are higher than 48 inches above the floor.   (ii) The keys to this thermostat are as high as about 51 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of this thermostat above the floor and above his reach range, and it deters him from staying at the Residence Inn.   (iv) The action required to relocate this thermostat is easily accomplishable and able to be carried out without much difficulty or expense.

39.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

40.   The discriminatory violations described in paragraph 38 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access including, but not limited to, the barriers to access he encountered in guestroom 118 and in the restroom in guestroom 118.

41.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and

damage without the immediate relief provided by the ADA as requested herein.

42.      Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

43.      Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

44.      Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

45.      Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

46.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

47.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Residence Inn and the parking lot, access aisles and walkways along the accessible routes, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when

such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*